IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARION D. DUNLAP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:02-CV-00597-WKW-CSC |
| v. | ) | (WO) |
| | ) | |
| BELLSOUTH | ) | |
| TELECOMMUNICATIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Marion D. Dunlap ("Marion") brings this action against BellSouth Telecommunications, Inc.[1] ("BellSouth"), as Sponsor and Plan Administrator[2] of two employee welfare benefit plans in which Curtis Vergil Jarvis ("Curtis"), deceased, participated. She alleges that BellSouth violated the Employee Retirement Security Act of 1974 ("ERISA") when it paid spousal benefits to defendant Donna Lynn Epperson[3] ("Donna Lynn"). Marion also brings a claim against Donna Lynn, pursuant to supplemental jurisdiction under 28 U.S.C. § 1367, for recovery of employee benefits paid to Donna Lynn as surviving spouse of Curtis.

This cause is before the Court on Donna Lynn's Motion for Judgment as a Matter of Law or, In the Alternative, Motion to Dismiss (Doc. # 53) ("Donna Lynn's Motion for Judgment"); a

---

[1] The Court takes judicial notice that BellSouth Telecommunications, Inc. is a wholly owned subsidiary of BellSouth Corporation. *See BellSouth Corporation's 2005 Annual Report on SEC Form 10-K filed on February 28, 2006.*

[2] The parties did not address the fact that BellSouth Corporation, not BellSouth Telecommunications, Inc., is the Sponsor and Plan Administrator of the plans. Because the parties do not make an issue of the distinction, and for simplicity, this Court will refer to the Plan Administrator as BellSouth and also refer to the defendant as BellSouth.

[3] In her brief, Defendant refers to herself as Donna Lynn Jarvis (Doc. # 53). However, Marion refers to Defendant as Donna Lynn Epperson (Doc. # 47). To avoid confusion, this Court will refer to this Defendant as Donna Lynn.

Motion for Summary Judgment (Doc. # 65) filed by BellSouth; Donna Lynn's Motion to Strike (Doc. # 58); and BellSouth's Motion to Strike (Doc. # 75). Donna Lynn's Motion to Dismiss is being treated as one for summary judgment, by prior order of the Court (Doc. # 61).

## I.  FACTS AND PROCEDURAL HISTORY

Curtis was an employee of BellSouth for over thirty-four years. For approximately five years beginning in 1989, Curtis cohabited with Marion in Maplesville, Alabama. At some point in 1994, it appears the relationship deteriorated, and Marion and Curtis began living apart from each other. They never had a licensed or ceremonial marriage, and they never divorced.

On June 1, 1995, Donna Lynn and Curtis were ceremonially married at the Bibb County Courthouse, pursuant to a Certificate of Marriage issued by the Probate Court of Bibb County, Alabama. Donna Lynn and Curtis had two children together, whom Curtis parented until his death on February 13, 1999.

Curtis participated in the BellSouth Pension Plan ("Pension Plan") and the BellSouth Employee Stock Option Plan ("PAYSOP").[4] The Pension Plan contained the following description of its administration:

> BellSouth Corporation is the Plan Administrator and Sponsor of the Plan. As such, it has the authority to interpret and administer the Plan provisions and to exercise discretion necessary or appropriate in the interpretation and administration of the Plan. BellSouth carries out administration under the terms of the Plan documents and trust agreements.
>
> The Plan Administrator has delegated day-to-day responsibility for administering Plan matters for each Participating Company to an Employees' Benefit Committee ("EBC") or such individual(s) as is(are) designated by the EBC or an Employees' Benefit Claim Review Committee ("EBCRC") to administer the Plan with respect

---

[4]The Pension Plan and PAYSOP will sometimes be referred to collectively as "the plans."

to all the Participating Company's employees. Among other things, the EBC or its designee(s), or the EBCRC's designee(s) [e.g., Assistant Secretary(ies)] have the authority to grant and deny initial claims for benefits under the Plan.

An EBCRC, appointed by BellSouth, reviews, on appeal, claims denied by the EBC or its designee(s), or the EBCRC designee(s). The EBCRC determines conclusively for all parties all questions arising in the administration of the Plan, and any such decision is final and not subject to further review.

. . . .

The Participating Companies fund all contributions to the Trust. They actuarially determine and pay the contributions into an irrevocable trust established exclusively for designated Plan purposes.

(Doc. # 66 Ex. 4.)

The PAYSOP documents provide the following description of its administration:

BellSouth Corporation shall be the Plan Administrator and Sponsor of the Plan . . . .

BellSouth Corporation shall maintain a separate account for each Participant and maintain separate subaccounts with respect to contributions and income allocations made by BellSouth Corporation income earned thereon for each year the Participant was an Eligible Employee under this Plan and with respect to each year the Participant was a participant in a Qualified ESOP maintained by an Interchange Company where the Participant's Account with respect to such plan has been transferred to this Plan's trust . . . . BellSouth Corporation shall allocate BellSouth Stock to such accounts in accordance with the Plan . . . . Allocations made by BellSouth Corporation in good faith shall be final insofar as permitted by applicable law.

. . . .

BellSouth Corporation shall appoint an Employee Stock Ownership Plan Committee which shall have such powers as may be necessary to enable it to administer the Plan, except for powers vested in BellSouth Corporation and the Trustee.

. . . .

3

> BellSouth Corporation and the Committee are each a named fiduciary
> as that term is used in ERISA with respect to the particular duties and
> responsibilities provided in the Plan to be allocated to it.

(Doc. # 66 Ex. 1.)  Thus, BellSouth, the Administrator of the Pension Plan and PAYSOP, retained

discretion to interpret and administer the plans.[5]

Upon the death of Curtis, BellSouth undertook to distribute benefits to the surviving spouse.

Curtis had listed Donna Lynn as the beneficiary and spouse on several BellSouth documents; the

death certificate identified Donna Lynn as the spouse of Curtis; a facially valid marriage certificate

between Donna Lynn and Curtis was produced to BellSouth; and Donna Lynn made representations

to BellSouth that she was the surviving spouse.  Lacking any information or knowledge indicating

Donna Lynn was not the surviving spouse, BellSouth awarded all surviving spouse benefits to Donna

Lynn.  The Pension Plan payment in the amount of $34,321.42 was made on April 29, 1999 and the

PAYSOP award of 357.4416 shares was made on May 28, 1999.

On October 25, 2001, over two years after awarding the benefits to Donna Lynn, BellSouth

received notice from Marion that *she* had been adjudged the surviving spouse of Curtis by the Circuit

Court of Chilton County, Alabama, and that she therefore was entitled to the Pension Plan and

PAYSOP benefits. This turn of events arose out of a state court action initiated by Marion in 1999

against Donna Lynn as administrator of the Curtis' estate.  During the trial, that action was settled

by consent decree dated July 19, 2001 (the "Consent Decree"), in which Donna Lynn stipulated (1)

that she desired to resign her appointment as Personal Representative of the Curtis estate and forego

her claim to a surviving spouse's share of the estate; (2) that Marion and Curtis "were married by

---

[5]Marion and BellSouth agree that the administrators retain discretion in each plan (Doc. # 66 and Doc. # 71).

common law no later than the year 1989 . . . and were never divorced";[6] and (3) that her own marriage and "Certificate of Marriage issued by the Probate Court of Bibb County, Alabama . . . are both void because Curtis Vergil Jarvis, Sr., lacked the capacity to contract marriage due to his pre-existing common law marriage" to Marion (Doc. # 53 Ex. G).  Thus, the courthouse-marriage between Donna Lynn and Curtis was rendered void by stipulation of the parties in the Consent Decree, over two years after the BellSouth benefits were paid to Donna Lynn.  Importantly, it is uncontested that BellSouth did not have knowledge of a challenge to the validity of Donna Lynn's marital status until October 25, 2001, over three months after entry of the Consent Decree and over thirty-one months after the death of Curtis.

Donna Lynn also agreed in the Consent Decree to provide an accounting to Marion as Successor Personal Representative.  There was no explicit mention in the Consent Decree of the employee benefits from BellSouth which had been paid to Donna Lynn.[7]  It is uncontroverted, however, that Marion knew her common-law husband's work history with BellSouth, and was made aware of BellSouth's payment and stock award to Donna Lynn by plan documents provided in discovery in the state-court action on May 17, 2000, prior to entry of the Consent Decree.  In fact, BellSouth, not a party to the state-court action, produced the plan documents in response to Marion's

---

[6]"It is settled that the law of Alabama recognizes common-law marriage." *Bishop v. Bishop*, 57 Ala. App. 619, 621 (Ala. Civ. App. 1976).

[7]Paragraph sixteen of the Consent Decree reads as follows:

> 16.  Marion Dunlap is hereby barred from hereafter presenting any claims for money damages against Donna Lynn Epperson Jarvis due to malfeasance or misfeasance in matters heretofore disclosed by her pleadings or testimony received by this Court, [sic] such prohibition against pursuit of such claims does not apply to inventory of [sic] accounting issues which have not yet been filed by Donna Lynn Epperson Jarvis or otherwise disclosed in her pleadings or her trial testimony.

(Doc. # 53 Ex. G.)

5

civil subpoena in that action (Doc. # 53 Ex. G).

Marion initially filed a complaint solely against BellSouth, on April 24, 2002, in the Circuit Court of Chilton County, Alabama.  The case was removed to this Court on May 24, 2002. Marion filed an Amended Complaint (Doc. # 10) against BellSouth on June 17, 2002, and a Second Amended Complaint (Doc. # 47) asserting claims against BellSouth and Donna Lynn on March 18, 2004.  Donna Lynn's Motion for Judgment As a Matter of Law or, In the Alternative, Motion to Dismiss (Doc. # 53) was filed on April 14, 2004.  The parties were subsequently advised that this Court would treat Donna Lynn's Motion for Judgment as one for summary judgment (Doc. # 61). Thereafter, the parties responded with supplemental responses and affidavits.  BellSouth filed a Motion for Summary Judgment (Doc. # 65) on July 16, 2004, which was also fully briefed.

## II.    JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because a federal question is presented under the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101 *et seq*. ("ERISA").  Jurisdiction over the claim against Donna Lynn is supplemental. *See* 28 U.S.C. § 1367.  The parties do not contest personal jurisdiction or venue, and this Court finds adequate allegations in support of both personal jurisdiction and venue under ERISA.

## III.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## IV.  DISCUSSION

Marion's Second Amended Complaint brings two claims. First, Marion alleges that BellSouth improperly denied her applications for benefits under the plans as surviving spouse of Curtis. Secondly, Marion invokes this Court's supplemental jurisdiction by adding a state law claim against Donna Lynn.[8] Each claim is subject to a separate motion for summary judgment, which the

---

[8]Donna Lynn argues that Marion asserts an ERISA claim against her. The Second Amended Complaint simply demands judgment against Donna Lynn for "all sums of money she recovered from Defendant BellSouth by representing herself to Defendant BellSouth as the spouse or surviving spouse of Curtis Vergil Jarvis, Sr." (Doc. #

Court will address in turn.

A.    *BellSouth's Motion for Summary Judgment*

BellSouth advances two arguments in support of its summary judgment motion.  First, BellSouth contends that it made the correct payment decision under the applicable standard of review.  Second, BellSouth says it has discharged its obligations under the plans by making payment to Donna Lynn in good faith with no notice of a competing claim, and is therefore discharged from any further liability.  Marion responds that BellSouth violated the plain terms of the plan documents, specifically in reference to the rights of a surviving spouse, which she has unquestionably been adjudged to be by consent in a state court.  Further, she contends that the plans acted hastily and without all the facts in making the payments to Donna Lynn and should therefore be denied the protection of the defense of good faith payment.  Finally, Marion contends that BellSouth has an obligation to recover "overpayments" under a provision on page 22 of the summary of the Pension Plan (Doc. # 71).  However, no cause of action against BellSouth for failure to collect an overpayment is alleged in the Amended Complaint or Second Amended Complaint.  The Court will therefore not indulge the argument nor address whether the payments to Donna Lynn were "overpayments" as that term is used in the plan documents.[9]

BellSouth and Marion agree that this claim is governed by ERISA.  The ERISA statute itself does not provide a standard of review.  In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989), the Supreme Court held that a denial of ERISA benefits is to be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to

---

47 ¶ 17).  Though the cause of action is not identified, it is not an ERISA claim.

[9]Marion does not dispute *what* was paid; her argument relates to *who* was paid.

determine eligibility for benefits or to construe the terms of the plan. Where such discretion is granted, the administrator's decision would ordinarily not be subject to judicial review except to prevent an abuse of that discretion. *Id.* However, where a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, the court must weigh that conflict in determining whether the discretion has been abused under a heightened arbitrary and capricious standard. *Id.* at 115.

Pursuant to *Firestone*, the Eleventh Circuit incorporated these varying levels of judicial review in a multi-step approach:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable grounds supported it" (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137-38 (11th Cir. 2004).

Accordingly, this Court follows the steps clearly set forth in *Williams*.

1.      *De Novo Standard - Correctness of Plan Administrator's Decision.*

BellSouth was required to award Pension Plan benefits and PAYSOP benefits to the surviving spouse of Curtis (Doc. # 66 Ex. 1 and Ex. 4). Marion frames the issue as a denial to her of benefits by BellSouth, and BellSouth's consequent failure to obtain Marion's waiver of rights to the benefits, which Marion claims was necessary because she was the true surviving spouse. Thus, says Marion, BellSouth was *de novo* wrong in awarding benefits to Donna Lynn.

In the *de novo* review of BellSouth's decision, this Court "is not limited to the facts available to the Administrator at the time of the determination."[10] *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994). Thus, this Court is privileged to review information that was not before BellSouth when applying the *de novo* standard. *Id.* Specifically, this Court considers evidence that Donna Lynn was not the surviving spouse of Curtis, despite the absence of this evidence in the administrative record.[11]

Marion relies upon the Consent Decree in the Chilton County Circuit Court, dated July 19, 2001. In the Consent Decree, it was adjudged that the marriage between Donna Lynn and Curtis was void because Curtis "lacked the capacity to contract marriage due to his preexisting common-law marriage to [Plaintiff]" (Doc. # 53 Ex. G). In light of the Consent Decree, this Court determines that Marion was the true surviving spouse of Curtis and BellSouth's decision to award benefits to Donna

---

[10]This Court is aware of recent district court cases that do not allow the court to go beyond the administrative record during a *de novo* review. *See Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1100-03 (M.D. Ala. 2006); *see also Hawkins v. Arctic Slope Reg'l Corp.*, 344 F. Supp. 2d 1331, 1335 n.6 (M.D. Fla. 2002). However, to the extent they apply to this case, this Court remains steadfast to the clearly established precedent in *Kirwan*, which has not been overruled. *Anderson* and *Hawkins* rely on *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556 (11th Cir. 1990), which holds that the court is to conduct a *de novo* review, but does not address the scope of the review. In fact, none of *Brown's* Eleventh Circuit progeny directly addresses the scope of the *de novo* review. Therefore, this Court aligns itself with *Kirwan*, which considered the issue post-*Brown* and clearly established the scope of a *de novo* review pursuant to ERISA.

[11]Because payment to Donna Lynn is affirmed as correct in further analysis under *Williams*, the Court is not called upon to resolve *how far* outside the administrative record is appropriate for inquiry.

Lynn was *de novo* wrong.

  2. *Application of Arbitrary and Capricious Standard*

  Because the parties do not dispute that BellSouth was vested with discretion in reviewing claims, we proceed directly to step three of the *Williams* analysis.

  Unlike the *de novo* review, when reviewing the decision of BellSouth pursuant to the arbitrary and capricious standard, this Court is permitted to review only the facts that were before BellSouth prior to making their decision. *See Jett v. Blue Cross Blue Shield of Ala., Inc*., 890 F.2d 1137, 1139 (11th Cir. 1989) ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard . . . the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made"); *see, e.g., Buckley v. Metro. Life*, 115 F.3d 936, 941 (11th Cir. 1997). Based upon the information available to BellSouth at the time of the award, this Court must determine whether there was a reasonable explanation for BellSouth's decision. *Id.* Plans which grant administrators discretion are entitled to the most deference from the courts. *Williams*, 373 F.3d at 1137-38 (11th Cir. 2004).

  Reviewing information available when Curtis died, BellSouth had no evidence indicating that Marion was the surviving spouse. Instead, BellSouth had credible, official documents, such as the marriage license and death certificate, identifying Donna Lynn as the surviving spouse. Moreover, Curtis identified Donna Lynn as his surviving spouse on plan documents. Thus, there was a reasonable explanation for BellSouth's decisions and it would have been unreasonable for BellSouth to ignore the evidence in hand. Marion insists that BellSouth should have investigated further before awarding payment benefits under the plans. In all candor, it was Marion who knew on the date of Curtis' death that she was in fact his widow; it was Marion who knew without contradiction on May

17, 2000, that the benefits had been paid to Donna Lynn and who failed to join Donna Lynn as a defendant in her individual capacity in the pending state court action; and it was Marion who negotiated a settlement with Donna Lynn in that proceeding without specifically addressing the BellSouth spousal benefit payments she knew had been paid to Donna Lynn.  The Court can conceive of no explanation for Marion's neglect of her own rights, nor of any reason BellSouth should have acted differently with the evidence before it.  Thus, BellSouth did not act arbitrarily or capriciously in awarding benefits to Donna Lynn.

> 3.    *Conflict of Interest*

Marion recognizes in her brief that conflict of interest is a potential element of the *Williams* analysis, but she offers no identifiable argument regarding this issue.  Nevertheless, the Court will briefly consider whether a conflict of interest exists in this case.  In *Buckley*, the court held that when "benefits are paid from a trust funded through periodic, nonrevisionary contributions" by the plan sponsor, there is no conflict of interest because there is "no direct expense as a result of the allowance of benefits, nor [are there direct benefits to the plan sponsor] from the denial or discontinuation of benefits."  *Buckley*, 115 F.3d at 939.  This Court finds that similar trusts exist in this case.  Under the Pension Plan and PAYSOP, benefits are paid from a trust, rather than out of BellSouth's operating expenses (Doc. # 66 Ex. 1 and Ex. 4).  Furthermore, funds are administered by third-party plan administrators and committees vested with discretionary powers. This Court finds that BellSouth did not act pursuant to a conflict of interest, and BellSouth's decisions to award benefits to Donna Lynn are affirmed.

Having determined that BellSouth's payments to Donna Lynn were not arbitrary and capricious, it is not necessary to address BellSouth's good faith defense at length.  The analysis in paragraph 2 *supra* applies directly to that issue.  If that were the dispositive issue, this Court would

find, for the reasons stated, that BellSouth is entitled to rely on the defense of good faith payment.

There being no dispute as to any material issue of fact, and for the aforementioned reasons, BellSouth's Motion for Summary Judgment is due to be granted.

B.      *Donna Lynn's Motion for Judgment as a Matter of Law or, In the Alternative, Motion to Dismiss.*

Donna Lynn earnestly asserts that she is entitled to a judgment as a matter of law as to Marion's claim against her.  However, based on the state court record before it, this Court is neither able nor best suited to untangle the web of what transpired in state court and what the legal effect of the Consent Decree and the circumstances surrounding it would be.  Pursuant to 28 U.S.C. § 1367(c) the exercise of supplemental jurisdiction can be declined when a court "has dismissed all claims over which it has original jurisdiction." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (also stating that district courts are "encouraged to dismiss any remaining state claims, when, as here, the federal claims have been dismissed prior to trial").

Having dismissed the federal question claims against BellSouth, this Court dismisses Marion's claim against Donna Lynn without prejudice, because "state courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

### VI.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. BellSouth's Motion for Summary Judgment (Doc. # 65) is GRANTED.

2. Plaintiff's Second Amended Complaint against Donna Lynn is DISMISSED WITHOUT PREJUDICE.

3. All other motions are DENIED as MOOT.

13

4.  An appropriate judgment will be entered consistent with this Memorandum Opinion

and Order.

Done this 16th day of May, 2006.

_____/s/   W.  Keith Watkins_____

UNITED STATES DISTRICT JUDGE